**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ABOULGAED, *et al.,*<br><br>                    Plaintiffs,<br><br>          v.<br><br>HIFTER, *et al.,*<br><br>                    Defendants. | No. 1:20-cv-00298-CKK |

**DEFENDANT AMBASSADOR AREF ALI NAYED'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Defendant Ambassador Aref Ali Nayed, former Ambassador from Libya to the United Arab Emirates ("Ambassador Nayed"), through counsel and pursuant to Federal Rule of Civil Procedure 12(b)(1), (b)(2), and (b)(6), respectfully moves the Court to dismiss the claims in the Complaint (Dkt. 1) against him for lack of personal and subject-matter jurisdiction and for failure to state a claim upon which relief may be granted.

**I.      Introduction**

This lawsuit, filed on February 6, 2020, is brought by six Libyan Plaintiffs against the United Arab Emirates ("UAE") and four individual Libyan Defendants, including Ambassador Nayed, for conduct that is alleged to have occurred in Libya and the UAE. Some of the few paragraphs in the Complaint about Ambassador Nayed allege conduct he supposedly undertook during his time as Libyan Ambassador to the UAE.

This lawsuit simply does not belong in a U.S. court, and the Court lacks subject-matter jurisdiction over it. It has no legally cognizable connection to the United States, it raises

questions of diplomatic and sovereign immunity, and it implicates the act of state and political question doctrines.

This Court also lacks personal jurisdiction over Ambassador Nayed, whose only alleged contacts with the United States and Washington, D.C. are a visit to meet with U.S. Government officials in a political capacity and a visit to the Heritage Foundation to give a speech.

For these reasons, explained in greater detail below, this Court should dismiss the claims against Ambassador Nayed in this spurious Complaint, which appears to have been filed with the ulterior purpose of being used as a political and propaganda tool in Libya and elsewhere, seeking to utilize and take advantage of the imprimatur of the seal of this Court and the U.S. justice system.[1]

## II.    Background

Plaintiffs are individuals and legal representatives of individuals who were killed or harmed in May and July 2019[2] (Dkt. 1 ¶¶108-109) by drone strikes of Libyan medical facilities alleged to have been carried out by the Libyan National Army ("LNA"), an organization headed by Defendant Khalifa Abulgasim Hifter ("Hifter"). (*Id.* ¶18). Plaintiffs allege that unnamed "officials" of the UAE provided the drones used in the attacks. (*Id.* ¶¶108-109).

As to Ambassador Nayed, the Complaint makes only a few sparse and immaterial allegations. Ambassador Nayed is not alleged to have had any involvement of any sort with the drone strikes that harmed Plaintiffs. Rather, the only allegations specifically about Ambassador Nayed are as follows:

---

[1] *See* Defendant Ambassador Nayed's Motion to Quash, filed concurrently herewith.

[2] Although the Complaint avers that there are "numerous classes of Libyan nationals who have been victimized" by other conduct (Dkt. 1 ¶133) and lists seven other "incidents" in which persons were killed (*id.* ¶¶70-81), it does not purport to bring a class action, is not directed to those other "incidents," and is instead limited to the claims of the Plaintiffs listed in the case caption.

Plaintiffs allege that Ambassador Nayed was the Libyan Ambassador to the UAE in 2014, and in that capacity, "facilitate[ed] the movement" of certain special purpose vehicles ("SPVs") from the UAE to Libya in 2014-2015. (*Id.* ¶50). They claim that he is currently a "Canadian and Libyan citizen[,]" who owns a "Libyan television channel which broadcasts throughout Libya and on YouTube." (*Id.* ¶21). Ambassador Nayed allegedly used this television channel to "foment discord" against the "Tripoli government." (*Id.* ¶¶21, 46). Plaintiffs also allege that Ambassador Nayed knew about "Hifter's agenda" and "supported him 100%." (*Id.* ¶21).

The Complaint describes Ambassador Nayed as "politically ambitious" (*id.* ¶46), having "appeared in Washington" in March 2017 to speak before the Heritage Foundation, "criticiz[ing] the government in Tripoli as not properly representing the people of Libya" (*id.* ¶48); and having visited Washington, D.C. in the fall of 2019 to meet with officials of the Trump Administration (*id.* ¶49). Plaintiffs quote Ambassador Nayed as saying: "My two visits (to the USA) were to present the narrative of Libya's duly elected Parliament, its transitional government, and its Libyan National Army, and our reading of the current situation, as well as detailed plans for the formation of a National Unity Government, and holding general presidential elections within 18 months from the liberation of Tripoli." (*Id.*).

## III.    Argument

### A.    This Court Lacks Personal Jurisdiction over Ambassador Nayed

Plaintiffs do not identify any basis for personal jurisdiction over Ambassador Nayed specifically. Instead, they vaguely and erroneously assert, as to all Defendants lumped together, that "Fed. R. Civ. P. 4(k)(2) provides this Court personal jurisdiction over foreign defendants who have transacted any business in this judicial district pursuant to the District of Columbia

Long-Arm Statute, D.C. Code Ann. §13-423." (Dkt. 1 ¶6). They also seem to assert a theory of universal jurisdiction. (*See id.* ¶¶7-8).

Because the allegations are improperly directed toward all Defendants generally and erroneously seek to conflate the D.C. long-arm statute with Rule 4(k)(2),[3] Plaintiffs' jurisdictional theories cannot be parsed. Nonetheless, Ambassador Nayed addresses below what are perceived to be Plaintiffs' three bases for subjecting him to personal jurisdiction in this Court and shows why all three are flat wrong and contradict the binding precedent of this Circuit.

### 1.    Rule 4(k)(2) Does Not Supply A Basis for Personal Jurisdiction Over Ambassador Nayed

It would be unconstitutional and outside any notion of fair play and substantial justice to subject Ambassador Nayed to personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2). Rule 4(k)(2) functions as a federal long-arm statute. *Mwani v. Bin Laden*, 417 F.3d 1, 10 (D.C. Cir. 2005).  In a case where there has been service of process (there has not been here),[4] a defendant is subject to personal jurisdiction under Rule 4(k)(2) in federal court if plaintiffs: (a) allege a claim arising under federal law, and (b) show that the defendant has sufficient contacts with the forum such that exercising jurisdiction would be consistent with the U.S. Constitution and laws. *Id.* Plaintiffs must establish a relationship that the defendant has with forum and the

---

[3] The D.C. long-arm statute and Rule 4(k)(2) are mutually exclusive and cannot be combined. Plaintiffs' personal jurisdiction allegations are not well-pled, and the Court could dismiss the matter against Ambassador Nayed on that basis alone. Nevertheless, because this Court would not have personal jurisdiction over Ambassador Nayed even if the allegations were well-pled, such that there is no need to give Plaintiffs an opportunity to re-plead, this brief addresses personal jurisdiction under Rule 4(k)(2) and the D.C. long-arm statute separately.

[4] On April 28, 2020, this Court authorized service by publication against all Defendants, including Ambassador Nayed. As noted in footnote 1 above, Ambassador Nayed files concurrently herewith a Motion to Quash any such service attempt on him. To avoid duplication, those arguments – which explain why all service attempts made to date on Ambassador Nayed are insufficient under the law and Rules of Civil Procedure – are not repeated here but are instead incorporated by reference.

"underlying controversy," *Doe v. Buratai*, 792 Fed. Appx. 6, 9 (D.C. Cir. Nov. 26, 2019) (internal citations and quotations omitted), and under Rule 4(k)(2), the relevant forum is the United States "as a whole." *Id.* at 8. *See also Livnat v. Palestinian Auth.*, 851 F.3d 45, 56-57 (D.C. Cir. 2017).

To exercise specific personal jurisdiction,[5] a defendant's "*suit-related conduct* must create a *substantial connection* with the forum." *Buratai*, 792 Fed. Appx. at 9 (emphasis in original; internal citations and quotations omitted). To survive a motion to dismiss for lack of personal jurisdiction, plaintiffs must make a *prima facie* showing of the pertinent jurisdictional facts. *Livnat*, 851 F.3d at 56-57. Conclusory allegations will not suffice. *Id.* at 57.

Here, under D.C. Circuit authority, Plaintiffs have not – and cannot – make a *prima facie* showing that Ambassador Nayed has the requisite minimum contacts with the United States to render constitutional the exercise of personal jurisdiction under Rule 4(k)(2).

Plaintiffs' only direct attempt to connect Ambassador Nayed with the United States as a whole are the allegations that he visited Washington, D.C. twice: in March 2017 to speak at the Heritage Foundation about Libya (Dkt. 1 ¶48), and to meet with officials in the Trump Administration in or around the fall of 2019 (*id.* ¶49). These allegations are woefully insufficient to establish the Court's personal jurisdiction over Ambassador Nayed in this lawsuit for two glaring reasons: (A) the visits are not alleged to be related in any way to the particular drone strikes at issue in this case, and (B) they do not constitute conduct with a "substantial connection" to the United States for purposes of this lawsuit. *See Livnat*, 851 F.3d at 57 (finding no personal jurisdiction under Rule 4(k)(2) because plaintiffs failed to allege non-conclusory

---

[5] As a resident and citizen of foreign countries, Ambassador Nayed is not subject to general jurisdiction in the United States, and Plaintiffs do not assert general personal jurisdiction over him. Indeed, Plaintiffs allege him to be a citizen of Canada and Libya (Dkt. 1 ¶21) and, in the case caption, identify his address as in the UAE.

facts as to how the particular attack was linked with any activity by defendant in the United States). *Cf. Mwani v. Bin Laden*, 417 F.3d 1, 13-14 (D.C. Cir. 2005) (finding personal jurisdiction over defendants under Rule 4(k)(2) where defendants were alleged to have specifically aimed the attacks at issue at harming U.S. citizens, U.S. property, and the United States generally).

Indeed, the speech at the Heritage Foundation about Libya's status and future took place in March 2017, two years before the drone strikes at issue. The two events are not alleged to have anything to do with one another.

Similarly, Ambassador Nayed's meetings with Trump officials – during which Ambassador Nayed allegedly presented "plans for the formation of a National Unity Government" and plans to hold presidential elections for same (Dkt. 1 ¶49) -- took place several months *after* the drone strikes and are likewise not alleged to be connected specifically to the drone strikes in any way. *See Livnat*, 851 F.3d at 57 (plaintiffs failed to allege any conduct in the United States by defendant related to the specific attack at issue).

In any event, meetings between Ambassador Nayed and the Trump Administration, even though in the United States, do not count toward the jurisdictional analysis because they fall within the "government contacts" exception. The "government contacts" exception bars from the personal jurisdiction analysis consideration of "any contacts due to a nonresident's entry into the District of Columbia for the purpose of contacting federal governmental agencies." *Toumazou v. Turkish Rep. of N. Cyprus*, 71 F. Supp. 3d 7, 16 (D.D.C. 2014), *lack of personal jurisdiction holding aff'd by* 2016 U.S. App. LEXIS 787, at *2-3 (D.C. Cir. Jan. 15, 2016) (internal citations and quotations omitted). *See also Second Amendment Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (finding that meeting of mayors in Washington, D.C. to discuss

legislative and litigation strategies failed to subject the mayors to personal jurisdiction in Washington, D.C. – "otherwise, people would be unable to meet in the nation's capital to discuss issues of concern without subjecting themselves to the jurisdiction of D.C. courts").

All of the Plaintiffs' other allegations attempting to tie Ambassador Nayed and this case to the United States are likewise jurisdictionally immaterial and irrelevant. For example, Plaintiffs make general and conclusory allegations, such as: "the entities named herein…have been engaging in activity on U.S. soil for the past 5 years, which includes a vigorous lobbying campaign which it launched with President Trump" and "certain" unnamed "activities also concerning the organizing and planning  the wholesale takeover of Libya" all of which allegedly "occurred in this District." (Dkt. 1 ¶2). Those conclusory, generalized allegations need not be accepted as true, do not count in the jurisdictional analysis, and establish no link to Ambassador Nayed or to the drone strikes for which these Plaintiffs have filed suit. *See Livnat*, 851 F.3d at 57 (finding that plaintiffs failed to make a *prima facie* showing of personal jurisdiction because plaintiffs' allegation that the Palestinian Authority used terrorism to influence the United States was conclusory and had no link to the particular attack at issue in the complaint); *Jungquist v. Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997) (speculation and conclusory statements that individuals were co-conspirators fail to establish jurisdiction under a conspiracy theory).

Also, to the extent Plaintiffs seek to tie Ambassador Nayed to Defendant Hifter for purposes of obtaining personal jurisdiction over Ambassador Nayed, Plaintiffs' efforts should fail. Importantly, Plaintiffs aver that Hifter is a U.S. citizen but that he left the United States in 2011 (Dkt. 1 ¶31) and undertook all of his conduct related to his Libyan operations in Libya. Plaintiffs do not allege that Defendant Hifter ever returned to the United States. Plaintiffs also do

not allege that Ambassador Nayed and Defendant Hifter undertook *any* conduct together in the United States, let alone any conduct related to this case.

### 2. The D.C. Long-Arm Statute Also Does Not Supply A Basis for Personal Jurisdiction Over Ambassador Nayed

Second, for all the same reasons that Rule 4(k)(2) does not supply a basis for personal jurisdiction over Ambassador Nayed, the D.C. Long-Arm Statute, D.C. Code Ann. §13-423, also does not supply personal jurisdiction over Ambassador Nayed. The Complaint does not allege that he transacted any business in the District of Columbia. And, as noted above, any trips that Ambassador Nayed made to Washington, D.C. to meet with the Trump Administration fall within the "government contacts" exception. *See Toumazou*, 71 F. Supp. 3d at 16.

### 3. Circuit Precedent Forecloses A Universal Jurisdiction Theory

Under binding Circuit precedent, Plaintiff's theory of universal jurisdiction also must be rejected. In *Buratai*, a case decided just last year, the D.C. Circuit stated unequivocally that universal jurisdiction "is not the law." 792 Fed. Appx. at 9.

For all the foregoing reasons, all claims against Ambassador Nayed should be dismissed for lack of personal jurisdiction.

### B. The Case Against Ambassador Nayed Should Be Dismissed for Lack of Subject Matter Jurisdiction

This matter should also be dismissed for lack of subject-matter jurisdiction.

In their Complaint, Plaintiffs invoke several sources of subject-matter jurisdiction: the Alien Tort Statute, 28 U.S.C. §1350; federal-question jurisdiction under 28 U.S.C. §1331; diversity jurisdiction under 28 U.S.C. §1332; and supplemental jurisdiction under 28 U.S.C.

§1367(a). (Dkt. 1 ¶¶1, 2, 4, 5). As explained below, subject matter jurisdiction is unavailable under all of these statutes.[6]

## 1.     This Court Lacks Jurisdiction Under the Alien Tort Statute

The Alien Tort Statute ("ATS") provides federal courts with jurisdiction over certain actions brought by aliens for select torts "committed in violation of the law of nations" in only a limited number of circumstances. 28 U.S.C. §1350. Plaintiffs' claims do not fall within those limited circumstances.

In 2013, the Supreme Court considered the ATS in *Kiobel v. Royal Dutch Petroleum*, 133 S. Ct. 1659 (2013), and held that the presumption against extraterritoriality applies to ATS cases. The Court found in that particular case that, where the plaintiffs were foreign nationals (although U.S. residents at the time of suit), the defendants were foreign, and "all the relevant conduct took place outside of the United States[,]" jurisdiction under the ATS was lacking. *Id.* at 1664, 1669. *See also Kaplan v. Cent. Bank of the Islamic Rep. of Iran*, 896 F.3d 501, 516 (D.C. Cir. 2018) (extraterritoriality in the ATS context is a jurisdictional, rather than a merits question). The Supreme Court added: "even where the claims touch and concern the territory of the United States, they must do so with sufficient force to displace the presumption against extraterritorial application." 133 S. Ct. at 1669. *See also id.* (finding that, for example, mere "corporate presence" in the United States would not suffice to displace the presumption against extraterritorial application).

*Kiobel* and its progeny thus establish that, where a case involves foreign plaintiffs, foreign defendants, and foreign conduct and is thus "foreign-cubed,"[7] the presumption against

---

[6] Jurisdiction under the Foreign Sovereign Immunities Act is unavailable as to the claims against Ambassador Nayed because that Act applies only to foreign state defendants. *See Samantar v. Yousuf*, 560 U.S. 305 (2010).

extraterritorial application applies and the case must be dismissed for lack of subject-matter jurisdiction. *See, e.g., Daimler v. Bauman,* 571 U.S. 117 (2014) (dismissing claims by Argentinians against a German company for acts that occurred in Argentina); *Jara v. Núñez*, 878 F.3d 1268, 1273-1274 (11th Cir. 2018) (affirming dismissal of ATS claims where alien plaintiffs sued former Chilean Lieutenant who lived in the United States but failed to allege that the defendant engaged in any "relevant conduct while on American soil"); *Mohammadi v. Islamic Rep. of Iran*, 947 F. Supp. 2d 48, 68-71 (D.D.C. 2013), *aff'd on other grounds*, 782 F.3d 9 (D.C. Cir. 2015) (dismissing ATS claim against Iranian officials for lack of jurisdiction in foreign-cubed matter); *Chen Gang v. Zhao Zhizhen*, 2013 U.S. Dist. LEXIS 134510, at *7-11 (D. Conn. Sept. 20, 2013) (dismissing ATS claim against former chief of Chinese broadcasting network and director of television station for lack of jurisdiction in "paradigmatic 'foreign-cubed'" matter and citing other cases dismissed on the same basis).

This case is decidedly foreign-cubed. The Plaintiffs are Libyan; the Defendants are Libyan; and all the relevant conduct took place in Libya (some also, allegedly, in the UAE). (*See, e.g.,* Dkt. 1 ¶96, alleging liability for certain Defendants' "pattern of extensive criminal activity on Libyan soil"; and *id.* ¶110, alleging that all Defendants caused certain Plaintiffs' harms by orchestrating "the attack on two field hospitals [in Libya] on July 27, 2019").

The fact that one of the Defendants is alleged to be a U.S. citizen and may own property in Northern Virginia (Dkt. 1 ¶18) does not alter the fact that this case is foreign-cubed and should be dismissed on that basis. *See Kiobel*, 133 S. Ct. at 1669 (finding that the "mere" U.S. "presence" of a corporate defendant was insufficient to displace the presumption against

---

[7] In *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 283, n. 11 (2010) (Stevens, J., concurring in judgment), the term "foreign-cubed" was used to describe litigation in which plaintiffs and defendants are foreign and all the relevant conduct occurred abroad.

extraterritoriality); *Jara*, 878 F.3d at 1273-1274 (even though defendant, an individual, was a U.S. citizen and resident at the time of suit, all of conduct relevant to the alleged violations of the law of nations took place in Chile; therefore the matter did not touch and concern the United States for ATS purposes); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 189 (2d Cir. 2014) (holding that an individual "defendant's U.S. citizenship" has no relevance to the ATS jurisdictional analysis because it was "made clear in *Kiobel* that the full 'focus' of the ATS was on conduct").

Moreover, although the Complaint alleges some limited U.S. conduct by Ambassador Nayed himself – namely, his visits to the United States to speak at a thinktank (in 2017) and to meet with Trump Administration officials (in 2019) – that conduct has no bearing on the jurisdictional analysis. Indeed, under *Kiobel* and its progeny, the only judicially cognizable conduct for purposes of the ATS jurisdictional analysis is conduct that allegedly violated the law of nations. *See Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 197 (5th Cir. 2017) ("Whether Plaintiffs seek a domestic application of the statute is determined by the location of the conduct relevant to the ATS's focus….[t]hat is, the focus is conduct that violates international law"); *Mastafa*, 770 F.3d at 190 (looking only at "relevant" U.S.-based conduct, namely any conduct by defendant in the United States that itself violates the law of nations or aids and abets aiding another's violation of the law of nations).

In this case, Plaintiffs seek relief for the harms against them in Libya by drone strike, alleging that *those* acts violated the law of nations. Ambassador Nayed's U.S. visits are not alleged to have anything to do with those particular incidents and Plaintiffs have not and *cannot* allege that Ambassador Nayed's conduct in the United States (or, frankly, elsewhere) violated international law.

The allegations of other supposed U.S.-based conduct by the Defendants generally – such as "lobbying" the U.S. government and "organizing and planning" (Dkt. 1 ¶2) – likewise are not alleged to have had anything to do with the particular incidents at issue in this Complaint. In any event, those general allegations are conclusory and should not be considered. *Mastafa*, 770 F.3d at 190 (finding that allegation that "because Chevron was headquartered in the United States, much of the decision-making to participate" in the unlawful scheme "was necessarily made in the United States" was a conclusory allegation that need not be credited).

The rest of the conduct allegedly undertaken by Ambassador Nayed – such as owning and operating a television station – took place outside of the United States and is not alleged to have anything to do with the specific drone strikes at issue here.

Plaintiffs also allege that Ambassador Nayed supposedly violated a U.N. Security Council Resolution in the UAE by "facilitating the movement" of certain SPVs from the UAE to Libya at the request of Libya's Minister of Interior in 2014 when Ambassador Nayed was "Libyan ambassador to the UAE." (Dkt. 1 ¶50). That conduct is, again, not alleged to be connected to the specific harms against Plaintiffs. In addition, we note that adjudicating claims against Ambassador Nayed for acts he undertook in his capacity as an ambassador in a foreign country raises concerns under the Vienna Convention on Diplomatic Relations, and international comity generally. *See* Vienna Convention on Diplomatic Relations ("VCDR"), 18 April 1961, 500 UNTS 95, *entered into force* 24 April 1964; *Knab v. Rep. of Georgia*, 1998 U.S. Dist. LEXIS 8820, *11 (D.D.C. May 29, 1998) (under Article 39 of the VCDR, former diplomats enjoy residual immunity for acts performed in the exercise of their functions as members of diplomatic missions).

Finally, Plaintiffs' general and conclusory allegation that their claims satisfy the "touch and concern" test because they "touch and concern the territory of the United States as described in detail throughout this Complaint and specifically in the Venue section herein" (Dkt. 1 ¶1) is non-sensical. Paragraph 15 of the Complaint sets forth the entirety of Plaintiffs' "Venue" allegations. It asserts that venue in this judicial district is proper based on 28 U.S.C. §1391(f)(4) "for a number of reasons," all of which have to do with the fact that Defendant Hifter allegedly previously traveled to the United States and the D.C. metropolitan area, hired a lobbyist, and that he and his family lived and owned property in Northern Virginia. *Id.*  It states nothing about Ambassador Nayed or Plaintiffs' ATS claims against him. Moreover, §1391(f)(4), the catch-all provision for venue in suits brought against foreign sovereigns, is wholly unrelated to Plaintiffs' claims against Ambassador Nayed, an individual. Paragraph 15 also does not come anywhere close to stating facts that would meet the *Kiobel* "touch and concern" test.

In addition, a lawsuit against Ambassador Nayed that complains of official acts taken in conjunction with the official acts of other sovereigns (here Libya and the UAE) are non-justiciable under the act of state and political question doctrines because the Complaint seeks to have this Court sit in judgment on the propriety under international law of the alleged transfer of SPVs from the UAE to the Government of Libya by diplomats and other government officials. (*See*, *e.g.*, Dkt. 1 ¶¶49-50, 115). *See also Hourani v. Alexander*, 796 F.3d 1, 11-17 (D.C. Cir. 2015) (finding that the act of state doctrine precluded consideration of claim that the Kazakh Embassy, at the behest of its Ambassador, published defamatory statements about plaintiffs and conspired with defendants to defame plaintiffs); *Lin v. United States*, 561 F.3d 502 (D.C. Cir. 2009) (affirming dismissal of case under the political question doctrine because deciding the

matter would impinge upon the Executive's function to determine who exercises sovereignty over Taiwan).

For all these reasons, the Court lacks ATS subject-matter jurisdiction in this case.

### 2. This Court Lacks Jurisdiction over Plaintiffs' TVPA Claims and They Fail to State a Claim for Relief Against Ambassador Nayed

Unlike the ATS, which provides its own federal question jurisdiction if and when applicable, the Torture Victim Protection Act ("TVPA") requires independent federal question jurisdiction under 28 U.S.C. §1331.

In this case, Plaintiffs do not allege TVPA liability as to Ambassador Nayed. (*See, e.g.,* Dkt. 1 ¶¶10-11, alleging "Defendant Hifter" to be a "proper Defendant" under the TVPA as "a *de facto* ruler of Eastern Libya"). Indeed, there is no allegation that Ambassador Nayed himself harmed any of the Plaintiffs or launched or approved the drone strikes at issue here. Therefore, it seems Plaintiffs do not seek §1331 jurisdiction as to the claims against Ambassador Nayed and therefore any TVPA claims against Ambassador Nayed (to the extent there are any) should be dismissed under Federal Rule of Civil Procedure 12(b)(1).

To the extent Plaintiffs seem to ask this Court to apply the TVPA to Ambassador Nayed indirectly via an unpled theory of conspiracy and/or aiding and abetting theory of vicarious liability, that effort also should fail under Federal Rule of Civil Procedure 12(b)(6). (*See, e.g.,* Dkt. 1, Count II, claiming various UAE officials "conspired with Defendants"; Count III ¶134, claiming that "Defendants…aided and abetted…in the murder of these individuals"). Plaintiffs' Complaint falls far short of stating a claim for conspiracy or aiding-and-abetting liability against Ambassador Nayed. *See Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983) (setting forth standards for stating a claim for relief under conspiracy and aiding and abetting theories of liability); *Chen Gang v. Zhao Zhizhen*, 2020 U.S. App. LEXIS 1338, *4-6 (2d Cir. Jan. 13, 2020)

16

(in TVPA case, noting that aiding and abetting liability may not apply, but finding that, in any event, plaintiffs' proposed allegations in an amended complaint failed to state a claim for relief under conspiracy and aiding and abetting theories).

Plaintiffs' claims that Ambassador Nayed's current acts as owner of a television station and previous conduct (in 2014) as a former ambassador fail to connect him in any material way to the harms at issue in this Complaint. Moreover, averring that Ambassador Nayed "knew what Defendant Hifter's agenda was, and supported him 100%" (Dkt. 1 ¶21) does not state a claim that Ambassador Nayed "knowingly and substantially" assisted in killing and harming the individuals who have brought this suit.

For these reasons, the TVPA claims against Ambassador Nayed, to the extent there are any, should be dismissed.

### 3.    This Court Lacks Diversity Jurisdiction

Under 28 U.S.C. §1332, diversity must be "complete," meaning all plaintiffs must be diverse from all defendants. *Eze v. Yellow Cab Co.*, 782 F.2d 1064, 1065 (D.C. Cir. 1986) (*per curiam*). Here, all Plaintiffs are Libyan nationals, and all Defendants are alleged to be foreign nationals, with the exception of Hifter, who is alleged to be a U.S. citizen. (Dkt. 1 ¶18). Plaintiffs do not meet the requirements of §1332, because *complete* diversity is required. *See Eze*, 782 F.2d at 1065 (finding that suit "may not be maintained" under the diversity statute "by an alien against a citizen of a state and a citizen of some other foreign country").

### 4. This Court Should Decline to Exercise Supplemental Jurisdiction over Any Non-Federal Claims

Plaintiffs also allege supplemental jurisdiction under 28 U.S.C. §1367 (Dkt. 1 ¶5), presumably for Count Four, which purports to seek relief under D.C. law for intentional infliction of emotional distress.[8]

Under the supplemental-jurisdiction statute, a district court may, in its discretion, choose not to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. §1367(c). "[I]n the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 424 (D.C. Cir. 2005) *See also Shafi v. Palestinian Auth.*, 642 F.3d 1088, 1097 (D.C. Cir. 2011) (whether to exercise supplemental jurisdiction is within the "sound discretion" of a district court).

In *Shafi*, another ATS case, the D.C. Circuit affirmed the district court's declination of supplemental jurisdiction of plaintiffs' claim of negligence under Israeli law, writing:

> The claim arose from events in another nation. The claim is made under the laws of that other nation. All parties are citizens of other nations and have no connection with the United States or specifically, with the District of Columbia.

*Id.* at 1097.

Here too, the claims at issue arose from events in another nation – Libya (and some allegedly in the UAE). Although Plaintiffs assert liability for intentional infliction of emotional distress under D.C. law, as opposed to Libyan law, all parties are citizens of Libya or the UAE

---

[8] Confusingly, although the Complaint contains only four causes of action, Plaintiffs invoke 28 U.S.C. §1331 "in connection with Counts One through Five." (Dkt. 1 ¶1).

and have no relevant connection to the United States or Washington, D.C. Therefore, the factors applicable to this analysis – judicial economy, convenience, fairness, and comity – all point in favor of declining the exercise of supplemental jurisdiction.

Finally, under 28 U.S.C. §1367(c)(4), this Court may decline the exercise of supplemental jurisdiction if "in exceptional circumstances, there are other compelling reasons for" doing so. This is a foreign-cubed case that does not belong in a U.S. court; it thus presents exceptional circumstances and compelling reasons for declining to exercise supplemental jurisdiction.

## IV.    Conclusion

For all the foregoing reasons, this case against Ambassador Nayed simply does not belong in a U.S. court, and Ambassador Nayed thus respectfully requests that this Court dismiss the matter against him with prejudice for lack of personal jurisdiction as well as lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted.

Dated: May 19, 2020                                      Respectfully submitted,


                                                            /s/ Melvin White
                                                        Melvin White (D.C. Bar No. 422087)
                                                        David Baron (D.C. Bar No. 458930)
                                                        Laina C. Lopez (D.C. Bar No. 477412)
                                                        Berliner Corcoran & Rowe LLP
                                                        1101 17th Street NW, Suite 1100
                                                        Washington, D.C. 20036
                                                        Tel: (202) 293-5555
                                                        Fax: (202) 293-9035
                                                        dbaron@bcr-dc.com
                                                        mwhite@bcr-dc.com
                                                        lcl@bcr-dc.com
                                                        *Counsel for Defendant Ambassador Aref Ali Nayed*